UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITO DAVID VALDEZ, JR., | No. C 06-4438 SI (pr) |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | |
| JAMES TILTON; et al., | |
| Defendants. | |

## INTRODUCTION

Tito David Valdez, Jr., an inmate in custody at the Correctional Training Facility in Soledad, California, filed a pro se civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review pursuant to 28 U.S.C. §1915A. His motions for appointment of counsel and for a preliminary injunction also are before the court for consideration.

## BACKGROUND

The complaint alleges the following:

MCI provides the telephone service to the prison in which Valdez is housed. MCI blocks collect calls from inmates to telephone numbers of persons who do not have direct billing arrangements with MCI.[1] As a result, an inmate who wants to make a collect call is limited to calling only people who have MCI telephone service. If the inmate tries to call a person who does not have MCI telephone service, the call is blocked automatically.

---

[1] The complaint does not explain whether inmates have an option to pay for telephone calls themselves, and instead only discusses the collect call procedure at the prison.

Valdez – and allegedly many other inmates – figured out a way to call people who do not have MCI telephone service. The inmate calls a person who has MCI telephone service and then has that person connect another person in to the telephone call, i.e., make a three-party call.

The problem with the three-party call is that it runs afoul of a prison regulation that provides: "An inmate shall not . . . [p]lace a third party call [or] . . . [k]nowingly participate in a forwarded, transferred, or three-party call on an inmate telephone." 15 Cal. Code Regs. § 3282(c)(4 & 9).

On January 28, 2005, Valdez was on the telephone talking to someone and asked her to place two three-party calls to two different people who had MCI collect call blocks on their telephone numbers. Correctional officer Gonzales interrupted the telephone call and told Valdez he was writing him up for making a third party call. Correctional officer Gonzales issued a CDC-128A counseling memorandum. See Complaint, Exh. C.

Valdez complains that the regulation violates his First Amendment rights to communicate with outsiders (including his family members) and violates his right of access to the court. He further contends that the slow mail service and infrequent personal visits make it particularly important that he be allowed three-party calling. Valdez also contends that his right to due process was violated when he was disciplined for violating the regulation.

**DISCUSSION**

A.  Review of Complaint

   1.  Standard of Review

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

2

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

2.   Claims

   a.   Telephone Regulation - First Amendment

Prisoners have a First Amendment right to communicate with persons outside prison walls. See Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002). Use of a telephone provides one means of exercising this right. Id.; see also Halvorsen v. Baird, 146 F.3d 680, 689 (9th Cir. 1998); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986); see also Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000), overruled on other grounds by Johnson v. California, 543 U.S. 499 (2005).

Liberally construed, the allegations of the complaint, state a cognizable claim for a First Amendment violation based on the regulation prohibiting three-party calls – whether that regulation is viewed alone or in conjunction with the telephone service that does not allow collect calls to non-MCI customers. The complaint adequately links defendants James Tilton, Jeanne Woodford, Roderick Hickman, Timothy M. Lockwood, A. P. Kane and Ben Curry to this claim.

   b.   Telephone Regulation - Access To The Courts

A constitutional right of access to the courts does exist, but to establish a claim for any violation of the right of access to the courts, the prisoner must show that there was an inadequacy in the prison's legal access program that caused him an actual injury. See Lewis v. Casey, 518 U.S. 343, 350-51 (1996). To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement. See id. at 355. Examples of impermissible hindrances include: a prisoner whose

3

complaint was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable even to file a complaint. See id. at 351. Mere delay in filing papers would not be enough, for example, if they were nevertheless timely filed or accepted and considered by the court. See Hudson v. Robinson, 678 F.2d 462, 466 (3d Cir. 1982); see also Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004).

Here, no actual injury has occurred. Valdez complains that he cannot communicate effectively with a law student assisting him in a pending civil action, Valdez v. Woodford, C 05-4443 SI (a case pending before the undersigned), because that student does not have MCI telephone service. Nothing adverse to Valdez has happened in that action, regardless of whether there has been any limit on his telephone access. Moreover, the constitutional right of access to the courts is limited to the initiation of a court action and does not require the state to enable the prisoner to discover grievances or to litigate effectively once in court. See Lewis, 518 U.S. at 354. The access to the courts claim is dismissed without leave to amend.

    c.  "Discipline" For Violating Telephone Policy

Valdez alleges that his Fourteenth Amendment right to due process was violated when he was disciplined for violating the rule against three-party telephone calls. He claims he was not given advance notice of the rule (e.g., by signs posted at the telephone area or by a warning before the discipline was imposed) and that he was not guilty of violating the rule because his calls (in which he admittedly had the person he called connect a third party to the telephone conversation) were three-way calls instead of third-party calls.

The first step in the due process analysis is determining whether any process was due. Interests that are procedurally protected by the Due Process Clause may arise from two sources-- the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes

4

in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (examples of such severe conditions include involuntary medication with psychotropic drugs or a transfer to a mental hospital). Plaintiff's is not a case involving changes so severe as to implicate the Due Process Clause itself. Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." See id. at 477-87. An interest of "real substance" generally will be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence," id. at 484, 487. In determining whether a restraint is an "atypical and significant hardship," Sandin suggests that courts should consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; the duration of the condition; the degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (conditions of confinement which violate the Eighth Amendment amount to an "atypical and significant hardship," but condition need not rise to the level of an Eighth Amendment violation to require due process); see, e.g., Wilkinson v. Austin, 125 S. Ct. 2384, 2394-95 (2005) (indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context"); Sandin, 515 U.S. at 485-86 (30-day placement in disciplinary segregation, where conditions mirrored conditions imposed upon inmates in administrative segregation and protective custody, did not result in type of atypical, significant deprivation for which state might create liberty interest; nor did situation present case where state's action would inevitably affect duration of sentence); Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (no liberty interest

5

implicated when inmate placed in disciplinary segregation for 14 days).

The complaint and attachments plainly show that Valdez did not suffer an "atypical and significant hardship" necessary to support a due process claim. The discipline of which he complains consisted of a CDC-128 counseling memorandum. He was not subjected to anything more than counseling and that simply does not amount to an atypical and significant hardship. The alleged possibility that the CDC-128 might be used against him in future parole considerations does not create a protected liberty interest. It is pure speculation that a CDC-128 might be used adversely and what effect it would have in parole consideration. The existence of a CDC-128 in his file also will not inevitably affect the duration of his confinement so as to trigger a right to due process in connection with it. The due process claim is dismissed without leave to amend.

B.      Motion For Appointment Of Counsel

Valdez moves for an order appointing counsel to represent him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See id. Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under section 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not evident. Based on the record before it, the court is not able to determine that there is a likelihood of success on the merits and the complaint does not raise particularly difficult legal claims. The motion for appointment of counsel is DENIED.

C.      Motion For A Preliminary Injunction

Plaintiff has moved for a preliminary injunction of an undescribed nature. Perhaps he wants the court to force prison officials to allow him to make the now-prohibited third-party

6

telephone calls that are now prohibited or perhaps he wants MCI to change its collect call policy. The court must guess what the injunctive relief would be, as plaintiff only identifies the end he seeks rather than the means to obtain it, i.e., he wants to be ensured "immediate access to familial association and the Courts, without any impediment to that access, when using the inmate telephone." Motion For Prelim. Injunction, p. 2.

The standard for issuing a temporary restraining order is similar to that required for a preliminary injunction. See Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J., dissenting). Requests for injunctive relief may be analyzed with either of two sets of criteria. The "traditional" test requires the movant to: (1) establish a strong likelihood of success on the merits; (2) show the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) show a balance of hardships favoring the movant; and (4) show that granting the injunction favors the public interest. See Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980). The "alternative" test requires that the movant demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor. See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003).

Valdez's motion fails under both tests. The record does not disclose a probability of success on the merits of the complaint. As explained earlier in this order, the only claim that is cognizable is the First Amendment claim pertaining to the regulation limiting third-party calls; the due process and access to the courts claims are being dismissed. Although the parties will need to develop the record with regard to the application of Turner v. Safley, 482 U.S. 78 (1987), to the telephone regulation that allegedly infringed plaintiff's First Amendment rights, it is unlikely that a regulation that appears to be designed to facilitate prison officials' ability to keep track of everyone who inmates communicate with will not pass muster under the Turner test. There is a separate potential problem with the action in that plaintiff may not even have exhausted administrative remedies as to this claim, although that is a matter for defendants to argue later. The record also undermines Valdez's allegations concerning the balance of

hardships and irreparable injury. This dispute exists because some persons outside prison don't want to subscribe to MCI's telephone service, and the existence of that untaken but readily available solution to their inability to talk to Valdez on the telephone speaks volumes about how serious the problem really is. The motion for a preliminary injunction is DENIED with prejudice. (Docket # 2.) Absent a dramatic change in the circumstances, plaintiff may not file another motion for a preliminary injunction or temporary restraining order.

## CONCLUSION

For the foregoing reasons,

1. Plaintiff's complaint states a claim for relief under 42 U.S.C. § 1983 against defendants James Tilton, Jeanne Woodford, Roderick Hickman, Timothy M. Lockwood, A. P. Kane and Ben Curry for a violation of plaintiff's First Amendment rights. All other claims and all other defendants are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint, a copy of this order, and a copy of all the other documents in the case file upon each of the following defendants:

- James Tilton
- Jeanne Woodford
- Roderick Hickman
- Timothy M. Lockwood (chief - regulation and policy division)
- A. P. Kane
- Ben Curry

Defendants Tilton, Woodford, Hickman, and Lockwood apparently are employed at the California Department of Corrections & Rehabilitation in Sacramento, California. Defendants Kane and Curry apparently are employed at the Correctional Training Facility in Soledad, California.

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a. No later than **March 2, 2007**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **April 6, 2007**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).

c. If defendants wish to file a reply brief, the reply brief must be filed and served no later than **April 23, 2007**.

4. All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

5. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is

1 required before the parties may conduct discovery.

2     6.     Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

     7.     Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

     8.     Plaintiff's motion for preliminary injunction is DENIED. (Docket # 2.)

     9.     Plaintiff's motion for appointment of counsel is DENIED. (Docket # 3.)

IT IS SO ORDERED.

Dated: December 18, 2006

                          _____
                             SUSAN ILLSTON
                             United States District Judge